IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAMES "JIMMY" FULLEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-0194 |
| | § | |
| GALVESTON INDEPENDENT SCHOOL | § | |
| DISTRICT and LYNN HALE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

On April 10, 2007, plaintiff James Fullen filed this action against Galveston Independent School District (GISD) and its former Superintendent, Lynn Hale, for civil rights violations arising under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, 42 U.S.C. §§ 1981 and 1983, and for the intentional infliction of emotional distress in violation of the common law of the State of Texas.   Pending before the court is Defendant Lynn Hale's Motion for Summary Judgment (Docket Entry No. 42), and Defendant Galveston Independent School District's Motion for Summary Judgment (Docket Entry No. 44).  For the reasons explained below both motions will be granted.

## I.  Procedural History

In a Memorandum Opinion and Order issued on August 17, 2007 (Docket Entry No. 17), the court dismissed the discrimination claims that plaintiff alleged against GISD under 42 U.S.C. § 1981

and § 1983, and the claim for the intentional infliction of emotional distress that plaintiff alleged against GISD under state law. Accordingly, the claims remaining against GISD are Title VII claims for race-based employment discrimination and retaliation.

At the status conference held on August 17, 2007, the court dismissed the race-based employment discrimination and retaliation claims that plaintiff asserted against Hale under Title VII and 42 U.S.C. § 1983.[1]  In a Memorandum Opinion and Order issued on January 14, 2008, (Docket Entry No. 33), the court denied Hale's motion to dismiss the race-based employment discrimination and retaliation claims that plaintiff asserted against her under 42 U.S.C. § 1981. Accordingly, the claims remaining against Hale are § 1981 claims for race-based employment discrimination and retaliation and a state law claim for the intentional infliction of emotional distress.

## II. Undisputed Facts

Plaintiff is a Caucasian male who began working for the GISD Police Department in 1992 as a patrolman.[2] Following promotions to the positions of sergeant and lieutenant, plaintiff was promoted to

---

[1]See Minute Entry, Docket Entry No. 18.

[2]Plaintiff's Deposition, Exhibit A attached to Defendant Galveston Independent School District's Motion for Summary Judgment (GISD's Motion), Docket Entry No. 44, pp. 45-46.

the position of police chief on April 17, 2002.[3]  Defendant Hale is a Caucasian woman who became GISD's superintendent in February of 2003 and resigned in January of 2006.[4]

In April of 2004 three African-American officers employed by the GISD police department (Sergeant Dewayne Baziel, and Corporals Ira Leigh and Timothy Fields) complained to Hale that plaintiff was engaging in improper conduct including race discrimination and retaliation towards them, favoritism towards two of his relatives, who were also employed by the GISD police department, and destruction of personnel records.[5]  On April 28, 2004, Hale placed plaintiff on administrative leave pending an investigation of the accusations.[6]

Hale commissioned Joe Tooley, an independent attorney from the Dallas area, to investigate the allegations that plaintiff had engaged in race discrimination and retaliation against certain officers, and showed favoritism to his relatives.[7]  Tooley did not

---

[3]Id. at 55, 59-60.

[4]Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion, Docket Entry No. 44, ¶2.

[5]See April 13, 2004, Memorandum from plaintiff to Terri Watkins, Exhibit A-2 attached to GISD's Motion, Docket Entry No. 44.

[6]Plaintiff's Deposition, Exhibit A attached to GISD's Motion, Docket Entry No. 44, p. 77.

[7]Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion, Docket Entry No. 44, ¶5.

investigate the allegation that plaintiff had destroyed personnel records because that allegation was investigated by the local district attorney's office.[8]  Following his investigation, Tooley issued a written report to Hale dated May 26, 2004, that concluded:

> [w]hile a fact finder might conclude that Chief Fullen has engaged in certain actions in a racially discriminatory manner, the objective evidence in support of such a claim is weak.  Even though the complaining employees appear to sincerely believe this is the case, the belief is a subjective one other than the factors mentioned herein.  However, there does appear to be sufficient evidence to sustain a finding of retaliation in Chief Fullen's treatment of Officer Fields as well as favoritism toward Detective Mary Fullen-Roark, Chief Fullen's sister.[9]

On May 26, 2004, the Galveston District Attorney's office issued a letter stating that its investigation of allegations that plaintiff had destroyed personnel records "did not find that the evidence rose to the level of criminal prosecution for the offense of tampering with a governmental record."[10]  In July of 2004, Hale ended plaintiff's administrative leave and allowed him to resume his duties as police chief.[11]

---

[8]Affidavit of Joe C. Tooley, Exhibit C attached to GISD's Motion, Docket Entry No. 44, ¶3.

[9]Exhibit C-1 attached to GISD's Motion, Docket Entry No. 44, p. 9.

[10]GISD's Motion, Docket Entry No. 44, p. 7.

[11]Plaintiff's Deposition, Exhibit A attached to GISD's Motion, pp. 113-14; Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion, Docket Entry No. 44, ¶6.

On July 28, 2004, Hale directed the police department's commissioned peace officers to attend an informal mediation conducted by one of GISD's attorneys. The purpose of the mediation was to resolve the conflict between plaintiff and the three officers who had lodged complaints against him.[12]  Following the mediation, Hale gave the plaintiff two directives: (1) to forward to her any and all citizen complaints about Baziel, Fields, or Leigh; and (2) to direct assignments for Fields and Leigh through Sergeant Baziel.[13]  Plaintiff agreed to follow the directives because "it's always been a practice to delegate the assignments through the sergeants."[14]  During his deposition, plaintiff explained that he understood the agreement to mean that officer assignments would be directed through the sergeants — plural — because GISD's police department employed two sergeants.  On August 9, 2004, following an incident in which Fields failed to follow a directive given by Sergeant Alcocer,[15] Hale wrote a letter addressed to each of GISD's peace officers stating that

_____

[12]Plaintiff's Deposition, Exhibit A attached to GISD's Motion, Docket Entry No. 44, pp. 115-20; Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion, Docket Entry No. 44, ¶7.

[13]Id. at 121.

[14]Id. at 122.

[15]See August 4, 2004, Memorandum from Jimmy Fullen to Lynn Hale, included in Exhibit A-6 attached to GISD's Motion, Docket Entry No. 44.

[t]he purpose of this letter is to clarify the outcome of
the mediation session on Wednesday, July 28, 2004.
Please be advised that Dwayne Baziel, Timothy Fields and
Ira Leigh will report directly to me.  Subsequently,
Fields and Leigh will be under the direct supervision of
Sgt. Dwayne Baziel.

All other officers will report directly to Chief Jimmy
Fullen.[16]

On August 16, 2004, plaintiff sent a memorandum to Hale in
which he objected to the policy stated in her August 9, 2004,[17]
letter as a violation of the Texas Education Code § 37.081(f),
which provides that

[t]he chief of police of the school district police
department shall be accountable to the superintendent and
shall report to the superintendent or the
superintendent's designee.  School district police
officers shall be supervised by the chief of police of
the school district or the chief of police's designee and
shall be licensed by the Commission on Law Enforcement
Officer Standards and Education.

On August 18, 2004, plaintiff attended a meeting at which he
learned that the Texas Education Code § 96.641 requires new police
chiefs to attend training conducted by the Bill Blackwood Law
Enforcement Management Institute of Texas (LEMIT) no later than two
years after their initial appointment.  As soon as plaintiff
returned to his office he called LEMIT and registered for the first

---

[16]See August 9, 2004, letter from Hale to Fullen, et al.,
included in Exhibit A-6 attached to GISD's Motion, Docket Entry
No. 44.

[17]See Memoranda from Fullen to Hale dated August 16, 2004, and
August 20, 2004, included in Exhibit A-7 attached to GISD's Motion,
Docket Entry No. 44.

available class, which was scheduled for March of 2005.  Plaintiff did not tell Hale that he had not received the required training.[18]

On August 27, 2004, Hale met with Dr. Rita Watkins and Dr. David Webb, LEMIT's executive and assistant director, respectively, to discuss a possible agency review that Hale had requested in July to help resolve the police department's on-going management problems.  After the meeting, Dr. Watkins reviewed LEMIT's records to determine plaintiff's level of experience and training.  During that review, Watkins learned that plaintiff had been appointed police chief on April 17, 2002, but had not taken the mandatory new chief training classes by the second anniversary of his appointment, i.e., April 17, 2004.  Dr. Watkins informed Hale of her findings, and further informed Hale that Texas Education Code § 96.641 states that a chief who fails to comply with the training mandate cannot continue to serve as chief.  On August 30, 2004, Dr. Watkins sent Hale a letter memorializing the information previously conveyed about plaintiff's failure to comply with the new chief training requirement.[19]

On September 1, 2004, Dr. Watkins sent a letter to the Executive Director of the Texas Commission on Law Enforcement Officer Standards and Education ("TCLEOSE") requesting that TCLEOSE

---

[18]Plaintiff's deposition, Exhibit A attached to Docket Entry No. 44, pp. 158-61.

[19]Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion, Docket Entry No. 44, ¶9, and Exhibit 1 attached thereto.

send Hale a letter explaining its official position regarding plaintiff's non-compliance with the police chief training requirement.[20] The same day plaintiff filed a charge questionnaire with the Equal Employment Opportunity Commission (EEOC) alleging that Hale treated him less favorably than she treated the three African-American officers who had lodged complaints against him.[21]

On September 13, 2004, GISD received a notice from the EEOC addressed to Mr. Terry Watkins, GISD's Human Resources Director, stating that plaintiff had filed a charge of race discrimination pursuant to Title VII.[22]

On September 14, 2004, Cynthia Martinez, the Director of Executive and Legal Services at TCLEOSE, sent Hale a letter stating that plaintiff had not received the training mandated for police chiefs and that she expected GISD to comply with the law.[23] Martinez stated that she expected that Hale or some other authorized officer of GISD to remove plaintiff from his position as police chief.[24]  Hale met with plaintiff to discuss the TCLEOSE

---

[20]Affidavit of Dr. Rita Watkins, Exhibit D attached to GISD's Motion, Docket Entry No. 44, ¶11.

[21]Exhibit A-15 attached to GISD's Motion, Docket Entry No. 44.

[22]Id.

[23]See Exhibit B-2 attached to GISD's Motion, Docket Entry No. 44.

[24]Affidavit of Cynthia Martinez, Exhibit F attached to GISD's Motion, Docket Entry No. 44, ¶¶ 4-5.

letter and at his request gave him until October 1, 2004, to try
and secure equivalent training elsewhere.[25]

On September 22, 2004, plaintiff sent a letter to the Texas
Higher Education Coordinating Board requesting a one-year extension
to take the mandated courses.  The Board responded that it lacked
the authority to grant his request for an extension.[26]

On September 29, 2004, Dr. Watkins talked with Hale and
learned that plaintiff was proposing to satisfy the chief training
requirement by attending classes in Louisiana.  Dr. Watkins
informed Hale that Texas Education Code § 96.641 identifies LEMIT
as the sole provider of the required training.[27]

On October 1, 2004, Hale met with plaintiff and argued that he
should have more time to obtain the training because he had not
served as GISD's chief of police while he was on administrative
leave from April to July of 2004.  Plaintiff argued that he should
have two years from the date he resumed his duties to complete the
required classes.[28]  Hale called Dr. Watkins, who disagreed with
plaintiff's argument that he had two additional years to comply

---

[25]Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion,
Docket Entry No. 44, ¶10.

[26]Plaintiff's Deposition, Exhibit A attached to Docket Entry
No. 44, pp. 169-70.

[27]Affidavit of Lynn Hale, Exhibit B attached to GISD's Motion,
Docket Entry No. 44, ¶11.

[28]Plaintiff's Deposition, Exhibit A attached to GISD's Motion,
Docket Entry No. 44, p. 198.

with the training requirement.[29]   Hale offered plaintiff an
officer's position, but he refused to accept the offer.[30]   GISD
appointed Officer David Thomas, an African-American, to replace
plaintiff on an interim basis, and Mark Smith, a Caucasian, to
replace him on a permanent basis.[31]

Plaintiff did not return to work after meeting with Hale on
October 1, 2004.   On October 4, 2004, plaintiff filed a formal
charge of race discrimination with the EEOC.[32]   In pertinent part
plaintiff's charge of discrimination alleged that

> I believe that I am being discriminated against because
> of my race, White, in violation of Title VII of the Civil
> Rights Act of 1967, as amended, in that the
> Superintendent of the Galveston I.S.D. has segregated the
> police department, giving favorable treatment to the
> Black Officers over the White Officers.[33]

### III. <u>Standard of Review</u>

Summary judgment is authorized if the movant establishes that
there is no genuine dispute about any material fact and the law
entitles it to judgment.   Fed. R. Civ. P. 56(c).   Disputes about
material facts are "genuine" if the evidence is such that a

---

[29]<u>Id.</u> at 199.  See also Affidavit of Dr. Rita Watkins, Exhibit
D attached to GISD's Motion, Docket Entry No. 44, ¶¶ 6-13.

[30]<u>Id.</u> at 197-99.

[31]<u>Id.</u> at 304.

[32]Exhibit A-16 attached to GISD's Motion, Docket Entry No. 44.

[33]<u>Id.</u>

-10-

reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc), (quoting Celotex, 106 S.Ct. at 2553-2554). If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. (citing Celotex, 106 S.Ct. at 2553-2554). In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products Inc., 120 S.Ct. 2097, 2110 (2000). Factual controversies are to be resolved in favor of the nonmovant, "but

only when . . . both parties have submitted evidence of contradictory facts." <u>Little</u>, 37 F.3d at 1075.

## IV.  <u>Analysis</u>

Plaintiff alleges that Hale and GISD removed him from his position as GISD's chief of police because he is Caucasian and because he complained of what he believed to be Hale's segregation of the GISD police department.  Defendants argue that they are entitled to summary judgment on plaintiff's federal law claims for race-based employment discrimination and retaliation because plaintiff's failure to complete statutorily required training rendered him unqualified for his position as police chief.  Hale additionally argues that she enjoys qualified immunity from plaintiff's claims and that she is entitled to summary judgment on plaintiff's state law claim for intentional infliction of emotional distress because plaintiff cannot produce evidence capable of raising a genuine issue of material fact for trial.

### A.   GISD's Motion for Summary Judgment

GISD argues that it is entitled to summary judgment on plaintiff's Title VII claims for race-based employment discrimination and retaliation because (1) plaintiff is unable to establish a prima facie case of race discrimination, (2) GISD removed plaintiff from his position for a legitimate, non-discriminatory reason, (3) plaintiff cannot show that GISD's

-12-

proffered reason for removing him from his position was not true but, instead, a pretext for discrimination and/or retaliation, (4) plaintiff cannot show that GISD's proffered reason for his removal, while true, was not the only reason and that another motivating factor was his race, (5) plaintiff did not engage in protected activity, and (6) plaintiff cannot prove that but for his engagement in protected activity, he would not have been removed from his position as GISD's police chief.[34]

### 1.   Applicable Law

Title VII prohibits employers from taking adverse employment actions against employees on the basis of race, and also prohibits adverse actions taken in retaliation for having engaged in protected activity such as complaining about race discrimination. See Foley v. University of Houston System, 355 F.3d 333, 339 (5th Cir. 2003).  A private right of action exists under Title VII only for violations involving intentional discrimination.  See Roberson v. Alltel Information Services, 373 F.3d 647, 651 (5th Cir. 2004) ("The Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff.").  Title VII does not protect plaintiffs from unfair decisions, but only from decisions based on unlawful discrimination.  See Nieto v. L & H Packing Co., 108 F.3d 621, 624 (5th Cir. 1997).  The issue in this case is not whether

---

[34]GISD's Motion, Docket Entry No. 44, p. 20.

the defendant made erroneous decisions, but whether the defendant's decisions were made with discriminatory intent.  See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995).  Plaintiff may rely on either direct or circumstantial evidence, or both, to prove his claims.  See Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005); Wallace v. Methodist Hosp. System, 271 F.3d 212, 219 (5th Cir. 2001), cert. denied, 122 S.Ct. 1961 (2002).

(a)  Direct Evidence

Direct evidence is "evidence which, if believed, proves the fact [in question] without inference or presumption." Fabela v. Socorro Independent School District, 329 F.3d 409, 415 (5th Cir. 2003).  If a plaintiff presents direct evidence of discrimination, he is allowed to bypass the burden-shifting analysis used in circumstantial evidence cases.  Id.  Plaintiff does not argue that he has direct evidence of discrimination but, instead, that he can overcome the defendant's motion for summary judgment with circumstantial evidence using the burden-shifting analysis stated in McDonnell Douglas Corp. v. Green, 93 S.Ct. 1817 (1973).

(b)  Circumstantial Evidence

The McDonnell Douglas burden-shifting analysis requires the plaintiff to present evidence establishing the existence of a prima facie case.  Id. at 1824.  Once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden

-14-

of production shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the actions at issue. Id.   If the defendant meets this burden of production, the presumption of discrimination created by the plaintiff's prima facie case disappears, and the burden shifts to the plaintiff to produce evidence capable of meeting the ultimate burden of persuasion on the issue of intentional discrimination.  A plaintiff meets this burden by producing evidence tending to show

> (1)   that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or
>
> (2)   that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic (mixed-motive[s] alternative).

Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)(citing Desert Palace, Inc. v. Costa, 123 S.Ct. 2148 (2003)). In a mixed-motive case the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus.   Id. at 312-313.   See also Machinchick 398 F.3d at 355; Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005).  When considering a motion for summary judgment in a discrimination case, courts must consider the record as a whole in determining whether the plaintiff/employee carried his or her burden in establishing a prima facie case and successfully rebutting the employer's articulated reason for the adverse action.

-15-

2.   <u>Race Discrimination Claim</u>

GISD argues that it is entitled to summary judgment on plaintiff's race-based employment discrimination and retaliation claims because plaintiff is unable to establish a prima facie case of race discrimination.  To establish a prima facie case of race discrimination the plaintiff must show that he (1) is a member of a protected group; (2) was qualified for his position; (3) suffered an adverse employment action; and (4) was replaced by someone outside of his protected class or treated less favorably than similarly situated employees outside of his protected class.  <u>See Okoye v. University of Texas Houston Health Science Center</u>, 245 F.3d 507, 512-13 (5th Cir. 2001).  GISD does not dispute that the plaintiff was a member of a protected class (Caucasian) and that he suffered an adverse employment decision when he was removed from his position as police chief.[35]  GISD argues that plaintiff cannot establish a prima facie case of race discrimination because he cannot establish that he was qualified to remain in the position of police chief, and cannot establish that he was replaced by someone outside of his protected class or treated less favorably than similarly situated employees of a different race.

---

[35]GISD's Motion, Docket Entry No. 44, p. 21.

-16-

(a)  Plaintiff's Qualifications

Undisputed facts establish that plaintiff was appointed chief of police on April 17, 2002, and that two years later on April 17, 2004, he had not taken the new chief training required by Texas Education Code § 96.641.  In pertinent part § 96.641 provides

(a)  The Bill Blackwood Law Enforcement Management Institute of Texas shall establish and offer a program of initial training and a program of continuing education for police chiefs.  The curriculum for each program must relate to law enforcement management issues.  The institute shall develop the curriculum for the programs.  The curriculum must be approved by the Commission on Law Enforcement Officer Standards and Education.

(b)  Each police chief must receive at least 40 hours of continuing education provided by the institute under this section each 24-month period.

(c)  An individual appointed or elected to that individual's first position as chief must receive not fewer than 80 hours of initial training for new chiefs in accordance with Subsections (d) and (e).

(d)  A newly appointed or elected police chief shall complete the initial training program for new chiefs not later than the second anniversary of that individual's appointment or election as chief. . . .

(e)  The institute by rule may provide for the waiver of:

(1)  the requirement of all or part of the 80 hours of initial training for new chiefs to the extent the new chief has satisfactorily completed equivalent training in the 24 months preceding the individual's appointment or election;
                    . . .

(i)  A police chief who does not comply with this section cannot continue to be the chief.

-17-

Since, § 96.641(i) clearly states that a "[a] police chief who does not comply with this section cannot continue to be chief," GISD argues that plaintiff's failure to complete the initial training within the prescribed two year period means that plaintiff was not qualified to continue serving as police chief beyond the second anniversary of his initial appointment.

Plaintiff does not argue that he timely completed the required training, that he was qualified to receive a waiver pursuant to § 96.641(e)(1), or that he was otherwise qualified to continue serving as police chief when he was removed from office on October 1, 2004. Instead, without citing any evidence, plaintiff argues that Hale could have placed him on administrative leave with pay instead of removing him from office.[36]  Since plaintiff has failed to present any evidence from which a reasonable fact finder could conclude that he was qualified to remain in office on October 1, 2004, plaintiff has failed to establish that element of a prima facie case that requires him to demonstrate he was objectively qualified for his position. See Bienkowski v. American Airlines, Inc., 851 F.2d 1503, 1506 & n. 3 (5th Cir. 1988)(noting that a prima facie discrimination claim requires the plaintiff to prove that he was objectively qualified for the position, i.e., that he held the necessary qualifications for the job he sought to

---

[36]Plaintiff's Response in Opposition to Defendant Galveston Independent School District's Motion for Summary Judgment (Plaintiff's Response), Docket Entry No. 64, p. 23.

hold); <u>Bynum v. Fort Worth Independent School District</u>, 41 F.Supp.2d 641, 653 (N.D. Tex. 1999)(granting summary judgment for school district due to plaintiff's failure to establish a prima facia case of employment discrimination where the plaintiff's decertification by the Army rendered him ineligible to continue serving as a JROTC teacher).

(b)  Plaintiff's Replacement and/or Disparate Treatment

**(1)  Plaintiff's Replacement**

Undisputed facts establish that following plaintiff's removal from office, an African-American officer, David Thomas, was appointed to serve as interim chief, but that GISD later hired Mark Smith, a Caucasian, to serve as plaintiff's permanent replacement.[37] Since the race of plaintiff's permanent replacement was the same as plaintiff's, i.e., Caucasian, GISD argues that plaintiff is unable to establish the fourth element of a prima facie case, i.e., that he was replaced by someone outside his protected class.  Plaintiff offers no response to this argument.

**(2)  Disparate Treatment**

GISD argues that plaintiff is unable to prove that he was treated less favorably than similarly situated employees of another

---

[37]See Plaintiff's Deposition, Exhibit A attached to GISD's Motion, Docket Entry No. 44, p. 304.

race because plaintiff testified at his deposition that he was
unaware of any non-Caucasian officers who were allowed to remain in
their positions after GISD and/or Hale became aware that they had
similarly failed to take statutorily required training.[38]   In
response plaintiff argues that evidence offered by Principal Brenda
May and administrative assistant Sheila Lidstone in support of his
retaliation claims "demonstrates that GISD's contention that [he]
was not qualified because of not taking the new chief training was
merely a pretext."[39]   Plaintiff argues that evidence presented in
May's affidavit shows that Hale "allowed at least one GISD teacher
to continue in his position with no change to his compensation even
though he did not have proper certification nor was he even
enrolled in a program to obtain proper certification,"[40] and that
evidence developed during Lidstone's deposition shows that Hale
"attempted to appoint [her, i.e.,] Sheila Lidstone to an Associate
Principal position even though [she] did not have . . . the proper
training to be an associate principal."[41] Assuming without deciding
that plaintiff was similarly situated to the uncertified teacher
and/or Lidstone, and that Hale treated plaintiff less favorably

---

[38]Id. at 215-16.

[39]Plaintiff's Response, Docket Entry No. 64, p. 25.

[40]Id. at 21 (citing Affidavit of Brenda May, included in
Exhibit E attached thereto, ¶¶ 4-5).

[41]Id. (citing S. Lidstone Deposition, included in Exhibit F
attached thereto, pp. 13-15).

than she treated them, the evidence presented by May and Lidstone
is not capable of establishing the fourth element of plaintiff's
prima facie race discrimination case because it does not establish
that either the uncertified teacher or Lidstone belong to a
different race than the plaintiff.  Accordingly, plaintiff has
failed to present any evidence from which a reasonable fact finder
could conclude that he was treated less favorably than similarly
situated employees outside of his protected class.

       (c)  Conclusions

    Since plaintiff has failed to present any evidence from which
a reasonable fact finder could conclude that he was qualified to
continue serving as police chief when he was removed from office on
October 1, 2004, or that he was permanently replaced by someone
outside of his protected class (i.e., of a different race) or
treated less favorably than similarly situated GISD employees
outside of his protected class (i.e., or a different race), the
court concludes that GISD is entitled to summary judgment on
plaintiff's race discrimination claim because plaintiff has failed
to establish a prima facie case of race discrimination.

      3.  <u>Retaliation Claim</u>

    GISD argues that it is entitled to summary judgment on
plaintiff's retaliation claim because plaintiff is unable to

establish either a prima facie case of retaliation or that its
stated reason for his removal from office was pretextual or
otherwise motivated by retaliatory intent.

(a)  Plaintiff's Prima Facie Case

GISD argues that plaintiff is unable to establish a prima
facie case of retaliation because he is unable to show that he was
qualified for the police chief's position.  Citing Holtzclaw v. DCS
Communications Corp., 255 F.3d 254, 260 (5th Cir. 2001), GISD
argues that

> the Fifth Circuit has held that being qualified for the
> position is an element of a prima facie case for
> retaliation under the A[ge] D[iscrimination in]
> E[mployment] A[ct].  The Fifth Circuit's rationale in
> Holtzclaw is directly applicable to the facts of this
> case and should defeat [plaintiff's] Title VII
> retaliation claim as a matter of law.[42]

Citing E.E.O.C. v. Dunbar Diagnostic Services, Inc., 92 Fed.Appx.
83, 84-85 (5th Cir. 2004), plaintiff responds that the Fifth
Circuit's holding in Holtzclaw is inapposite, and that
qualification for the position at issue is not an element of a
prima facie case of retaliation.[43]

Holtzclaw, 255 F.3d at 254, involved an employee who became
ill, left his job, successfully applied for long-term disability
(LTD) and Social Security disability insurance benefits, and then

---

[42]GISD's Motion, Docket Entry No. 44, p. 25.

[43]Plaintiff's Response, Docket Entry No. 64, pp. 15-16.

-22-

subsequently reapplied for his former position.  After stating on his application for re-employment that he was capable of performing all the essential functions of the position, Holtzclaw told his LTD insurer that he was totally disabled from performing his own or any other job and indicated that neither rehabilitation services, job modification, nor vocational training would allow him to return to work. Following the employer's failure to rehire him, Holtzclaw asserted employment discrimination claims against the employer under the Americans with Disabilities Act (ADA), the Employee Retirement Income Security Act (ERISA), and the Age Discrimination in Employment Act (ADEA).  The Fifth Circuit affirmed the district court's grant of summary judgment to the employer holding that "[b]ecause Holtzclaw is not physically able to do the job that he sought, either with or without accommodation, he fails to establish a prima facie case on any of his claims." Id. at 257.

On appeal Holtzclaw argued that his ADEA retaliation claim should have survived summary judgment even though he could not perform the job because qualification for the job is not a prima facie element of such a claim. Id. at 259-60.  Holtzclaw argued that if the employer acted for a discriminatory reason, then he should still recover on his ADEA retaliation claim regardless of whether he was qualified for the job.  The Fifth Circuit rejected Holtzclaw's argument stating that

> [w]e have never expressly made qualification a prima facie element of an ADEA retaliation claim, but today we

decide that such an element is necessary.  Retaliation claims are nothing more than a protection against discrimination in that the employee against whom the employer has retaliated suffers discrimination based on the employee's exercise of a right to charge, testify, assist, or participate in a protected activity under the ADEA.  See 29 U.S.C. § 623(d).

Because, in regard to other types of discrimination claims, including other ADEA claims, we consistently have required that a plaintiff be qualified for the job he seeks, it would be illogical not to require one here.  A contrary holding would be inconsistent with the observation that "'Congress did not intend . . . to guarantee a job to a person regardless of qualifications.  In short, [Title VII] does not command that any person be hired simply because he was formerly the subject of discrimination.'"  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  As the district court noted:

> [T]o analyze this issue in any other manner would lead to illogical and inconsistent results.   For example: a plaintiff's discrimination suit could be dismissed because he was unqualified for the position applied for, even though there was some direct evidence of age discrimination on the part of the employer.  However, under the same facts, the plaintiff could survive summary judgment if his complaint were that he was discriminated against because he complained of age discrimination.
>
> This is much like our present case where Plaintiff will have his ADA and ERISA claims dismissed because he is, as a matter of law, not qualified for the position applied for, yet has the possibility of surviving summary judgment on his ADEA retaliation claim based on his being refused the same job the Court has found he is not qualified to hold.  This is illogical, and cuts against the intent of these statutes.

We therefore conclude that qualification for the job is an element of a prima facia claim for ADEA retaliation.

Id. at 260.

Dunbar, 92 Fed.Appx. at 83, involved a plaintiff whose employer discharged her and argued before the district court that she could not recover for retaliation because her doctor had prescribed temporary bed rest to help with pregnancy complications, and "in being unable to attend work, she was not 'qualified' for her job." 92 Fed.Appx. at 84. In support of its motion for summary judgment the employer cited Holtzclaw for its holding that under the ADEA, "a plaintiff who sought reemployment was required to prove that he was qualified for his position." Id. (citing Holtzclaw, 255 F.3d at 257). The Fifth Circuit rejected the employer's argument and distinguished Holtzclaw on grounds that "there had been no determination that [the Dunbar plaintiff] suffers from a long-term disability, or that she was [otherwise] not qualified." Id. at 85 (observing that "Dunbar implicitly admitted that [the plaintiff] was qualified by offering her clerical work in lieu of medical leave—and then terminated her before her reply"). Under these facts, the Fifth Circuit held that whether the plaintiff "was terminated because she was not 'qualified' or for some impermissible reason—the central issue of the retaliation claim—remains an issue for the trier of fact. We therefore decline Dunbar's invitation to extend the Holtzclaw requirements to this particular case, and find that JMOL was inappropriate." Id.

The facts of the case now before the court are more analogous to those in Holtzclaw than in Dunbar because there is no dispute that when Hale removed plaintiff from office on October 1, 2004, he was not objectively qualified to continue serving as police chief. Dunbar is distinguishable because in that case there was no evidence that the plaintiff was not qualified to continue holding her position. Because plaintiff has failed to present any evidence from which a reasonable fact finder could conclude that he was qualified to continue serving as police chief when Hale was removed from office on October 1, 2004, plaintiff has failed to establish a prima facie element of a Title VII retaliation claim. See Holtzclaw, 255 F.3d at 260 (qualification a prima facie element of an ADEA retaliation claim); Hernandez v. Crawford Building Material Co., 321 F.3d 528, 531 & n. 1 (5th Cir.), cert. denied, 124 S.Ct. 82 (2003) (retaliation claims are analyzed the same under Title VII and the ADEA). See also Bienkowski, 851 F.2d at 1506 & n. 3 ("a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action" and noting that "[b]y this we mean that plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit for the position for which he was hired"); Bynum, 41 F.Supp.2d at 653 (holding that plaintiff's

decertification by the Army that rendered him unqualified to continue serving as a JROTC teacher precluded him from establishing prima facie case of discrimination).

(b)  Pretext and/or Motivating Factor

GISD has offered evidence that plaintiff was removed from his position as GISD's chief of police because he failed to complete new police chief training required by the Texas Education Code within the mandated two year period, and that representatives from two state agencies notified Hale that his failure to complete this training rendered him unable to continue serving as police chief. Since GISD has offered a legitimate, non-retaliatory reason for the adverse action suffered by the plaintiff, plaintiff must show that GISD's articulated reason is not true or that, if true, retaliatory animus was a motivating factor in his removal from office.  See Rachid, 376 F.3d at 312.  See also Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999) ("employee must show that 'but for' the protected activity, the adverse employment action would not have occurred").

**(1)  Pretext**

Plaintiff may create a fact issue on pretext either by showing that the employer's proffered explanation is false or unworthy of credence, or by presenting evidence of disparate treatment.  See

-27-

Wallace, 271 F.3d at 220.  An explanation is false or unworthy of credence if it is not the real reason for the adverse action.  See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002).  Plaintiff has not presented evidence of falsity but, instead, evidence of disparate treatment.

Plaintiff argues that GISD's contention that he was not qualified because he failed to complete the new chief training required by the Texas Education Code was merely a pretext.[44]  In support of this argument plaintiff cites evidence offered by Principal Brenda May and administrative assistant Sheila Lidstone. Plaintiff argues that evidence presented in May's affidavit shows that Hale allowed "at least one GISD teacher to continue in his position with no change to his compensation even though he did not have proper certification nor was he even enrolled in a program to obtain proper certification."[45]  Plaintiff argues that in contrast, Hale not only removed him from his position but also made his continued employment contingent upon his agreement to reduce his rank and pay.  Plaintiff argues that evidence developed during Lidstone's deposition shows that Hale "attempted to appoint [her]

_____

[44]Id. at 20-23.

[45]Id. (citing Affidavit of Brenda May, included in Exhibit E attached thereto, ¶¶ 4-5).

-28-

to an Associate Principal position even though [she] did not have
. . . proper training to be an associate principal."[46]

    None of the evidence cited by plaintiff is sufficient to raise
a genuine issue of material fact for trial on the issue of pretext.
May's testimony regarding the uncertified teacher is insufficient
to raise a fact issue because May testified only that the
district's human resources department was notified that the teacher
had lost his eligibility to participate in the alternative
certification program; she did not testify that Hale knew the
teacher had lost his eligibility to participate in the alternative
certification program, or that Hale allowed him to remain in his
position after learning that fact.  Lidstone's deposition testimony
is similarly insufficient to raise a fact issue because she
testified only that Hale discussed the possibility of appointing
her to a position for which she was not qualified, and not that
Hale ever knowingly appointed her to such a position.  Because
plaintiff has failed to present any evidence from which a
reasonable fact finder could conclude either that GISD's
legitimate, non-discriminatory reason for removing plaintiff from
office was not true or unworthy of credence, or that GISD's
decision-maker, Hale, intentionally treated him less favorably than
she treated other employees who became ineligible to perform the

_____

    [46]Id. (citing S. Lidstone Deposition, included in Exhibit F
attached thereto), pp. 13-15).

duties of their positions, plaintiff has failed to raise a genuine issue of material fact for trial on the issue of pretext.

### (2)  Motivating Factor

Instead of showing pretext, a plaintiff may prove that retaliation was a motivating factor for the termination.  See Richardson v. Monitronics International, Inc., 434 F.3d 327, 333 (5th Cir. 2005) (citing Rachid, 376 F.3d at 305).  When the plaintiff concedes that retaliation was not the sole reason for the adverse action of which he complains, but argues that retaliation for having engaged in activity protected by Title VII was a motivating factor for the adverse action, the "mixed-motive" framework applies.  Id.  If the employee proves that retaliation for having engaged in activity protected by Title VII was a motivating factor in the employment decision, the burden shifts to the employer to prove that it would have taken the same action despite the retaliatory animus.  Id.  The employer's burden in this situation is essentially the same as proving an affirmative defense.  Id.

In support of his argument that Hale's retaliatory animus was a motivating factor in his removal from office, plaintiff argues that he complained to her of race discrimination in mid-August of 2004, and filed a complaint questionnaire with the EEOC in which he complained of race discrimination on September 1, 2004. Plaintiff

-30-

then cites the May affidavit as well as the deposition testimony of former GISD school board presidents John Ford and Michael B. Hughes as evidence that Hale's retaliatory animus was a motivating factor in her decision to remove him from office.  Plaintiff relies on May's statement that she overheard the phone conversation during which Watkins informed Hale that plaintiff had not completed the required training to which Hale responded "I've got him,"[47] and on May's statement that Hale was pleased to receive that information because Hale "was looking for a justification for removing Mr. Fullen from his position as he had been causing her problems by opposing work place decisions that she had made."[48]  Plaintiff relies on Ford's testimony that the information that he had not taken the new chief training program was a "Christmas present" for Hale because when "this issue came along, Mrs. Hale was very happy to have it so that she could remove Mr. Fullen."[49]  Ford explained that in his opinion Hale "would have used any excuse she found to remove Mr. Fullen or any other employee that disagreed with her management of the district."[50]  Hughes similarly testified that Hale

---

[47]Affidavit of Brenda May, Exhibit F attached to Plaintiff's Response, ¶¶8-10.

[48]Id. at ¶10.

[49]Ford Deposition, Exhibit C attached to Plaintiff's Response, p. 60.

[50]Id. at 61.

was "glad to have had that opportunity," i.e., to remove plaintiff from office.[51]   Plaintiff argues that this evidence shows that regardless of whether GISD had a valid reason for removing him from office, "retaliation was a motivating factor in the decision to remove [him] from his position as Chief of Police and terminate his employment."[52]

The Fifth Circuit has held that hostile remarks and their temporal proximity to an adverse employment action can raise a fact issue as to whether retaliation was a motivating factor for the adverse action.   In Richardson the Fifth Circuit held that statements that the plaintiff's manager made to another person that, "We'll just fire [the plaintiff's] ass.  We'll worry about it later" and his explanation that he was "tired of all of this stuff" going on with the plaintiff could relate to leaves the plaintiff had taken under the Family Medical Leave Act (FMLA), or to an ongoing suit that she had filed against her employer, or to both. 434 F.3d at 335.  The Fifth Circuit also held that a statement from human resources that they would no longer accommodate the plaintiff and had "accommodated her enough" could have been probative of a hostile environment.  Id.  Because these statements were made in close temporal proximity to the plaintiff's termination, the Fifth

_____

[51]Deposition of Michael B. Hughes, Exhibit D attached to Plaintiff's Response, p. 48.

[52]Plaintiff's Response, Docket Entry No. 64, p. 24.

Circuit concluded that a fact issue existed as to whether retaliation for having engaged in activity protected by Title VII was a motivating factor in her termination.  <u>Id.</u>

The court concludes that the "I've got him" statement that May attributed to Hale, and Ford's and Hughes' testimony that Hale was pleased to have a reason to remove plaintiff from office because he had opposed work place decisions that she had made are less probative of retaliatory animus than the statements in <u>Richardson</u>, and that no reasonable fact finder could infer from them that retaliatory animosity was a motivating factor in plaintiff's removal from office, i.e., that but for plaintiff's having complained of race discrimination Hale would not have removed him from office after receiving information that he had not completed the training required for new police chiefs.  Alternatively, the court concludes that even if plaintiff's evidence is sufficient to raise a fact issue on retaliatory motive, the summary judgment evidence establishes overwhelmingly that Hale would have removed plaintiff from office despite any retaliatory animosity.

In <u>Richardson</u>, 434 F.3d at 327, the court held that the defendant had met its burden to establish as a matter of law that it would have fired the employee despite any retaliatory motive. The court held that the undisputed evidence of the employer's attendance policy and the employee's violations of that policy overcame the employee's evidence of retaliatory motive "which

-33-

consist[ed] entirely of ambiguous or conclusional statements." 434
F.3d at 336.  The court stated that the only reasonable conclusion
a fact finder could have made based on that evidence was that the
employer would have fired the employee regardless of retaliatory
animus.  The court concludes that the facts of this case are
analogous to those of <u>Richardson</u>.  In this case the undisputed
evidence establishes that § 96.641 of the Texas Education Code
requires newly appointed school district police chiefs to complete
training provided by LEMIT within two years of their initial
appointment, that plaintiff failed to complete the statutorily
required training within the two year period, that Texas Education
Code § 96.641(i) plainly states that police chiefs who fail to
complete the required training cannot remain in office, and that
representatives of both LEMIT and TCLEOSE informed Hale of this
fact. This undisputed evidence overcomes plaintiff's evidence of
retaliatory motive, which consists entirely of ambiguous and/or
conclusory statements.  Based on this undisputed evidence, the
court concludes that the only reasonable conclusion a jury could
make is that GISD would have removed plaintiff from office
regardless of any retaliatory animus that Hale may have harbored
towards him.

### (3)  Conclusions on Pretext and Motivating Factor

Close timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a prima facie case of retaliation.  However, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.  Plaintiff has offered no such evidence and, if he has, the court concludes that evidence is overcome by the undisputed evidence that plaintiff would have been removed from his position as police chief because his failure to timely complete the statutorily required new chief training rendered him unqualified to be in office when, on October 1, 2004, Hale removed him from office.  Accordingly, the court concludes that plaintiff has failed to raise a fact issue for trial by presenting evidence from which a reasonable fact finder could conclude that GISD's legitimate, nondiscriminatory reason for removing plaintiff from the police chief's position is untrue or unworthy of credence, or that GISD's decision to remove plaintiff from office was otherwise motivated by retaliatory intent.

### (c)  Conclusions

For the reasons explained above in § IV.A.3(a) the court concludes that plaintiff has failed to establish a prima facie case

of retaliation in violation of Title VII. For the reasons explained above in § IV.A.3(b) the court concludes that (1) plaintiff has failed to establish that GISD's legitimate, non-discriminatory reason for removing plaintiff from his position as police chief was a pretext for retaliation, or that but for Hale's intent to retaliate against him for complaining about race discrimination, GISD would not have removed him from the police chief's position, and (2) plaintiff's evidence of retaliation is outweighed by undisputed evidence that GISD would have removed him from his position as police chief regardless of any retaliatory intent that Hale may have harbored towards him. Accordingly, the court concludes that GISD is entitled to summary judgment on plaintiff's Title VII retaliation claim.

**B.   Hale's Motion for Summary Judgment**

Hale argues that the summary judgment facts and legal arguments that support dismissal of the Title VII claims that plaintiff has alleged against GISD also support dismissal of the § 1981 claims alleged against her. Alternatively, Hale argues that she is entitled to qualified immunity for the § 1981 claims alleged against her and that she is entitled to summary judgment on plaintiff's state law claim for the intentional infliction of emotional distress because plaintiff is unable to establish a prima

facie case of emotional distress.[53]  Asserting that he has raised

genuine issues of material fact for trial on the claims alleged

against GISD for race discrimination and retaliation under Title

VII, plaintiff asserts that Hale has violated 42 U.S.C. § 1981 by

participating in GISD's discriminatory employment practices.[54]

      1.   <u>Federal Law Claims</u>

Claims of race discrimination and retaliation brought under

42 U.S.C. § 1981 are governed by the same evidentiary framework

applicable to claims of employment discrimination brought under

Title VII.  <u>See</u> <u>Roberson</u>, 373 F.3d at 651 ("The standard of proof

for Title VII discrimination claims also applies to § 1981

claims.").  Accordingly, for the reasons that the court has already

concluded that GISD is entitled to summary judgment on plaintiff's

claims for race discrimination and retaliation under Title VII, the

court also concludes that Hale is entitled to summary judgment on

the race discrimination and retaliation claims that plaintiff has

asserted against her under § 1981 because she was GISD's decision-

maker.  Alternatively, for the same reasons, the court concludes

that Hale is entitled to qualified immunity to the claims for race

---

[53]Defendant Lynn Hale's Motion for Summary Judgment, Docket Entry No. 42.

[54]Plaintiff's Response in Opposition to Defendant Lynn Hale's Motion for Summary Judgment, Docket Entry No. 65.

discrimination and retaliation that plaintiff has alleged against her under § 1981 because her decision to remove plaintiff from office did not violate a constitutional or statutory right of which a reasonable official would have known, and was not objectively unreasonable under the law at the time of the incident. See Foley, 355 F.3d at 337 (setting forth two-step process for analyzing assertion of qualified immunity).

2. State Law Claim

Plaintiff alleges that the actions Hale took as GISD's superintendent were taken intentionally or with reckless disregard to the consequences and that they caused him severe emotional distress.[55] Hale argues that she is entitled to summary judgment on this claim because plaintiff cannot raise a genuine issue of material fact for trial.[56] Plaintiff has failed to offer any argument in opposition to Hale's motion for summary judgment on this claim.[57]

To recover for the intentional infliction of emotional distress, plaintiff must establish that: (1) Hale acted

_____

[55]Plaintiff's First Amended Complaint, Docket Entry No. 4, p. 10 ¶¶ 49-50.

[56]Defendant Lynn Hale's Motion for Summary Judgment, Docket Entry No. 42, pp. 12-13.

[57]See Plaintiff's Response in Opposition to Defendant Lynn Hale's Motion for Summary Judgment, Docket Entry No. 65.

intentionally or recklessly; (2) Hale's conduct was extreme and outrageous; (3) Hale's actions caused plaintiff emotional distress; and (4) plaintiff's emotional distress was severe.  See <u>City of Midland v. O'Bryant</u>, 18 S.W.3d 209, 216 (Tex. 2000); <u>Twyman v. Twyman</u>, 855 S.W.2d 619, 621-622 (Tex. 1993).  To be extreme and outrageous, conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"  <u>Mattix-Hill v. Reck</u>, 923 S.W.2d 596, 597 (Tex. 1996)(quoting <u>Twyman</u>, 855 S.W.2d at 621).  Distress is considered severe only if it is so severe "that no reasonable person could be expected to endure it."  <u>Benavides v. Moore</u>, 848 S.W.2d 190, 195 (Tex.App.--Corpus Christi 1992, writ denied).  Severe emotional distress does not include mere worry, anxiety, vexation, embarrassment, or anger.  <u>Regan v. Lee</u>, 879 S.W.2d 133, 136 (Tex.App.--Houston [14th Dist.] 1994, no writ).  <u>See also</u> <u>GTE Southwest, Inc. v. Bruce</u>, 998 S.W.2d 605, 612 (Tex. 1999)(recognizing that Texas courts narrowly construe the intentional infliction of emotional distress doctrine).  Whether conduct is extreme and outrageous and whether the plaintiff's reaction to it is severe are questions of law for the court to decide.  <u>O'Bryant</u>, 18 S.W.3d at 216-217 (citing <u>Wornick Co. v. Casas</u>, 856 S.W.2d 732, 734 (Tex. 1993)).

Hale argues that she is entitled to summary judgment on plaintiff's claim for the intentional infliction of emotional distress because plaintiff complains of an ordinary employment dispute that does not constitute extreme and outrageous conduct and that did not cause plaintiff to suffer severe emotional distress. The court agrees. Plaintiff admits that the only actions Hale took which caused him severe emotional distress were (1) establishing an alternative line of communication within the police department and (2) removing him as police chief.[58] As evidence that he suffered severe emotional distress, plaintiff states that he is now unable to spend time with his family because he has to work nights and that he suffered one fainting spell.[59] Plaintiff has failed to present any evidence from which a reasonable fact finder could conclude either that the conduct of which he complains constitutes extreme and outrageous conduct, or that it caused him severe emotional distress. Plaintiff's failure to present any evidence showing either that Hale's conduct caused him to suffer emotional distress or that the emotional distress he suffered was severe is fatal to his claim for the intentional infliction of emotional distress. See GTE Southwest, 998 S.W.2d at 612 ("mere insults,

_____

[58]Plaintiff's Deposition, Exhibit B attached to Defendant Lynn Hale's Motion for Summary Judgment, Docket Entry No. 42, pp. 303-305.

[59]Id. at 259-61, 306-07.

-40-

indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct"). Accordingly, the court concludes that summary judgment dismissal of plaintiff's intentional infliction of emotional distress claim against Hale is proper.

### V. <u>Conclusions and Order</u>

Undisputed facts establish that plaintiff was appointed chief of GISD's police department on April 17, 2002, that the Texas Education Code requires newly appointed school district police chiefs to complete training at the Bill Blackwood Law Enforcement Management Institute of Texas within two years of their initial appointment, and that on April 17, 2004, the second anniversary of his appointment, plaintiff had not completed the required training classes. The undisputed evidence also establishes that the defendants did not remove plaintiff from office until October 1, 2004. Since plaintiff neither argues nor presents any evidence from which a reasonable fact finder could conclude that when he was removed from office he was qualified to continue serving as GISD's police chief, the court concludes that plaintiff has failed to establish a prima facie case for any of the claims for race discrimination or retaliation that he has asserted in this action. Moreover, even if plaintiff had established a prima case of race discrimination and/or retaliation, the court concludes that the

undisputed evidence that he failed to complete the statutorily mandated training within the prescribed period, overcomes any and all of the evidence that plaintiff has offered in support of his argument that the defendants' legitimate, non-discriminatory reason for removing him from office was either a pretext for discrimination and retaliation, or was motivated by discriminatory and/or retaliatory intent. For the reasons stated above in § IV.B.2, the court concludes that Hale is entitled to summary judgment on plaintiff's state law claim for the intentional infliction of emotional distress. Accordingly, for the reasons stated in § IV.A, Defendant Galveston Independent School District's Motion for Summary Judgment (Docket Entry No. 44) is **GRANTED,** and for the reasons stated in section IV.B, Defendant Lynn Hale's Motion for Summary Judgment (Docket Entry No. 42) is **GRANTED.**

**SIGNED** at Houston, Texas, on this 18th day of June, 2008.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE